**SO ORDERED.**

**SIGNED this 24 day of May, 2019.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                                                     CASE NO. 18-03328-5-DMW

JOHN DOUGLAS BAILEY, JR.
CANDICE MARIE BAILEY
                                                                                CHAPTER 13
            DEBTORS

ORDER ALLOWING OBJECTION TO CLAIM

This matter comes on to be heard upon the Objection to Claim filed by John Douglas Bailey, Jr. and Candice Marie Bailey ("Debtors") on September 17, 2018 and the United States' Opposition to Debtor's [sic] Objection to Claim filed by the Internal Revenue Service ("IRS") on November 14, 2018.  The court conducted a hearing in Raleigh, North Carolina on December 18, 2018.  Cort I. Walker, Esq. appeared for the Debtors, and Kyle L. Bishop, Esq. appeared for the IRS.  Based upon the pleadings, the arguments of counsel and the case record, the court makes the following findings of fact and conclusions of law:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.  The court has the authority to hear this

matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2. The Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on July 2, 2018.

3. The IRS filed an amended proof of claim ("Claim") on October 30, 2018 asserting a claim in the amount of $2,277.79. The Claim is based on the Debtors' liability for the "shared responsibility payment" ("SRP") imposed by 26 U.S.C. § 5000A(b) for failure to comply with the commonly called "individual mandate" of 26 U.S.C. § 5000A(a) to maintain minimum essential coverage[1] under the Patient Protection and Affordable Care Act ("ACA")[2] during the relevant tax years. Section 5000A(b)(1) of the Internal Revenue Code states as follows:

> If a taxpayer who is an applicable individual, or an applicable individual for whom the taxpayer is liable . . . , fails to [maintain minimum essential coverage] for 1 or more months, then, except as provided in subsection (e), there is hereby imposed on the taxpayer a penalty with respect to such failures in the amount determined under subsection (c).

26 U.S.C. § 5000A(b)(1) (2010).[3]

4. The Claim includes as an attachment an itemization classifying the amounts owed as "excise" taxes assessed for tax years 2015, 2016 and 2017. The IRS asserts the Claim is entitled to priority treatment in the Debtors' bankruptcy case pursuant to 11 U.S.C. § 507(a)(8), either as an income tax or as an excise tax. Section 507(a)(8) prioritizes the payment of certain unsecured claims of governmental units, including, subject to certain time limitations, claims based on

---

[1] As defined by 26 U.S.C. § 5000A(f).
[2] 42 U.S.C. § 18001 *et seq.* (2010).
[3] The SRP has been effectively eliminated through revisions to 26 U.S.C. § 5000A(c), implemented through what is commonly known as the Tax Cuts and Jobs Act of 2017. Pub. L. No. 115-97, 131 Stat. 2054 (2017). The requirement of 26 U.S.C. § 5000A(a) to maintain minimum essential coverage remains; however, the revisions to 26 U.S.C. § 5000A(c), which governs how the SRP is calculated, result in no SRP being owed for noncompliance with the minimum essential coverage requirement. *See* Pub. L. No. 115-97, § 11081. The revisions became effective for taxable years beginning after December 31, 2018, after the tax years at issue in this case. *Id.*

"tax[es] on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition" and "excise tax[es] on . . . transaction[s] occurring before the date of the filing of the petition . . . ." 11 U.S.C. § 507(a)(8)(A) and (E).

5. The Debtors assert the SRP does not qualify as a tax, and instead, it should be treated as a penalty giving rise to a general unsecured claim in the Debtors' case. The Debtors assert that even if the SRP qualified as a tax, it is not an income tax, and it would not be entitled to priority as an excise tax, because § 507(a)(8)(E) prioritizes excise taxes on *transactions*. The Debtors argue that no transaction took place when the Debtors failed to maintain minimum essential coverage under the ACA.

6. "The burden is on the party seeking to claim priority status to prove that the claim qualifies for priority status." *In re Util. Craft, Inc.*, No. 06-10816, 2008 Bankr. LEXIS 3564, at *6 (Bankr. M.D.N.C. Dec. 29, 2008). The court is not persuaded by the arguments by the IRS. The SRP is a penalty, not a tax, and even if the SRP were a tax, it would not qualify as an income tax or as an excise tax on a transaction entitled to priority under § 507(a)(8)(A) or (E).

### The Shared Responsibility Payment is a Penalty, Not a Tax

7. Although 26 U.S.C. § 5000A(b)(1) imposes, in its own words, a "penalty" on individuals who fail to maintain minimum essential coverage, the way an exaction is labeled in legislation is not determinative of its true nature. *See United States v. Reorganized CF&I Fabricators of Utah*, 518 U.S. 213, 220 (1996) (noting that historically, the United States Supreme Court has "looked behind the label placed on the exaction and rested its answer directly on the operation of the provision using the term in question."). The court must examine the function of 26 U.S.C. § 5000A(b)(1) and its imposition of the SRP to determine whether the SRP is a tax or a penalty.

3

8.     The IRS asserts the court need not embark on an analysis of the function of 26 U.S.C. § 5000A(b)(1), because the United States Supreme Court has already classified the SRP as a tax. In *National Federation of Independent Business v. Sebelius*, the Supreme Court was tasked with evaluating the constitutionality of the individual mandate and the SRP. 567 U.S. 519 (2012). In that case, the Court was bound by the requirement that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Hooper v. Cal.*, 155 U.S. 648, 657 (1895) (cited by C. J. Roberts in his opinion, 567 U.S. at 563). Writing for the Court in *Sebelius*, Chief Justice Roberts found that the SRP "may reasonably be characterized as a tax." 567 U.S. at 574. This court is evaluating 26 U.S.C. § 5000A(b)(1) in a different context and is not constrained or convinced by the *Sebelius* opinion.

9.     The IRS filed a Notice of Supplemental Authority with this court on April 18, 2019, citing *In re Cousins*, No. 18-10739, 2019 Bankr. LEXIS 1156 (Bankr. E.D. La. Apr. 10, 2019). The *Cousins* court, conducting the same analysis of the SRP as this court, found that the *Sebelius* opinion "forecloses some of" the court's analysis of the SRP, because the *Sebelius* court applied the same test to determine the SRP's function as the *Cousins* court was required to apply. 2019 Bankr. LEXIS 1156, at *7, n. 26. The *Cousins* court's determination that it was bound by *Sebelius* to that extent is misguided. Of course, this court must apply the same test as the *Sebelius* court to determine the function of the SRP. The difference lies in the purpose of applying the test. This court is not bound to examine "every reasonable construction" of § 5000A(b)(1), and instead it must make a determination as to the function of the SRP without the constraints under which the *Sebelius* court conducted its analysis.

10.     "A tax is an enforced contribution to provide for the support of government . . . ." *United States v. La Franca*, 282 U.S. 568, 572 (1931). The Fourth Circuit Court of Appeals also

recognizes four typical characteristics of a tax: a tax generally is "[a]n involuntary pecuniary burden, regardless of name, laid upon individuals or property; [i]mposed by, or under authority of the legislature; [f]or public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; [u]nder the police or taxing power of the state [or federal government]." *Williams v. Motley*, 925 F.2d 741, 743 (4th Cir. 1991) (citing *New Neighborhoods, Inc. v. West Virginia Workers' Compensation Fund*, 886 F.2d 714, 720 n.7 (4th Cir. 1989)). In contrast, the hallmark of a penalty is "punishment for an unlawful act or omission . . . ." *United States v. Reorganized CF&I Fabricators of Utah*, 518 U.S. 213, 224 (1996).

11. Finding that the SRP "may for constitutional purposes be considered a tax,"[4] the *Sebelius* Court considered various characteristics[5] of the SRP. The Court noted that the SRP only applies to individuals whose income requires them to pay taxes and typically will amount to "far less" than the cost of insurance, and therefore does not impose an excessively heavy burden on the individual; there is no scienter requirement within 26 U.S.C. § 5000A(b)(1); and the SRP is collected by the IRS through its normal means of taxation, except payment of the SRP cannot be sought through "those means most suggestive of a punitive sanction, such as criminal prosecution." 567 U.S. at 563, 566 (citing 26 U.S.C. § 5000A(g)(2)).

12. As to the Court's finding that the absence of a scienter requirement indicates the SRP is a tax, this court agrees with the dissent in *Sebelius*: "The *presence* of such a requirement suggests a penalty--though one can imagine a tax imposed only on willful action; but the *absence* of such a requirement does not suggest a tax." 567 U.S. at 668 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting). Although the Court found the protection from criminal prosecution to be

---

[4] 567 U.S. at 566.
[5] The Court in large part mirrored its analysis of certain statutory characteristics from decades earlier when it decided *Bailey v. Drexel Furniture Co.*, 259 U.S. 20 (1922), also referred to as the *Child Labor Tax Case*.

indicative that the SRP is a tax, 26 U.S.C. § 5000A(g)(2) also states that the Secretary of the Treasury may not file a notice of lien with respect to the property of an individual who fails to pay the SRP or levy on that property. The ability of the Secretary of the Treasury to file notices of lien and to levy on property to enforce payment of taxes is fundamental. This court disagrees with the Court that the limitation within § 5000A(g)(2) of the Secretary's rights indicates the SRP is a tax. If anything, that limitation places the SRP further into the realm of being a penalty than a tax. The SRP's limited applicability to actual taxpayers and its minimally burdensome financial cost do not persuade this court that the SRP is a tax, in light of the other two factors which weigh against classifying the SRP as a tax.

13. Even more indicative is that Section 11081, Part VIII of the *Tax Cuts and Jobs Act of 2017*, Public Law 115-97, reduces the SRP amount to zero. It is difficult to imagine that a tax would be reduced to zero. Generally, under the Internal Revenue Code, taxes are collected, and penalties are abated. This subsequent act by Congress implies more of a penalty abatement than a statutory tax repeal. This court finds it interesting that this statutory change was not mentioned in *Cousins*, and gives more support for a divergent conclusion.

14. The IRS asserts that even if this court is not persuaded by *Sebelius*, it must find that the SRP is a tax based on the four characteristics of a tax listed in the Fourth Circuit's *Williams* case, 925 F.2d 741 (4th Cir. 1991). In that case, the court examined an exaction assessed against "individuals who seek to register an uninsured vehicle or who fail to demonstrate that a registered vehicle is covered by liability insurance." *Id.* at 742. To restore her driving privileges after they were suspended for failure to provide evidence of liability insurance to the Virginia Department of Motor Vehicles, Ms. Motley was required to pay the assessment. *Id.* Payment of the assessment would allow Ms. Motley to maintain driving privileges despite not having liability insurance, and

the funds collected under the applicable law were paid to insurance companies for the purpose of reducing the cost of uninsured motorist coverage for individuals who obtained liability insurance. *Id.* at 742-43. The court found that the assessment was a tax after examining whether it was "[a]n involuntary pecuniary burden, regardless of name, laid upon individuals or property; [i]mposed by, or under authority of the legislature; [f]or public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; [u]nder the police or taxing power of the state." *Id.* at 743.

15. The IRS asserts the *Williams* case is particularly relevant to the matter before the court, because it involved an exaction based on an individual's failure to maintain insurance. The IRS fails to recognize adequately that the assessment in *Williams* is distinguishable from the SRP, because in *Williams*, Ms. Motley was required to pay the assessment in order to resume an activity, namely registering and operating an uninsured vehicle. The SRP is assessed upon failure to maintain sufficient insurance and is not linked to any related activity on the part of the noncompliant individual.

16. The four-prong test employed by the *Williams* court, although binding on this court and widely used by other courts in identifying taxes, is not particularly helpful in this case. Specifically, the SRP arguably could be serving a "public purpose" by encouraging individuals to obtain health insurance to avoid liability for the SRP; however, phrased another way, the SRP is meant to deter individuals from forgoing health insurance, and that characterization places the SRP back into the realm of being a penalty. *See United States ex rel. IRS v. Dumler (In re Cassidy)*, 983 F.2d 161, 164 (10th Cir. 1992) (finding that the four-prong test was not determinative, because an assessment against early retirement fund withdrawals could be characterized as promoting

7

retirement savings (a characteristic of a tax's public purpose) or as deterring early withdrawals, indicating it is penal in nature.).

17.  The IRS cites language from the ACA which it asserts indicates the SRP was imposed for the public purpose of reducing the cost of healthcare for the general public; however, that language states that "the [individual responsibility] requirement [to maintain minimum essential coverage], together with the other provisions of this Act, will significantly reduce administrative costs and lower health insurance premiums." 42 U.S.C. § 18091(2)(J) (2010).  That section of the ACA focuses on the requirement to maintain insurance, not imposition of the SRP, as the primary means to reduce premiums.  The SRP, then, functions as a penalty against individuals who fail to abide by the insurance requirement serving the public purpose.

18.  The IRS similarly asserts the SRP exaction was enacted with the public purpose of defraying the costs associated with ensuring healthcare is available to a wider segment of the population; however, the court finds absurd the notion that the SRP could be meant to provide for the support of government.  The SRP is only owed if an individual <u>disobeys</u> the mandate to maintain coverage under the ACA.  Even if § 5000A(b)(1) has generated significant funds for the United States, with annual payments expected to total $4 billion by 2017 according to the *Sebelius* court,[6] fundraising legislation which issues a mandate and, in turn, relies on disobedience fails practical logic.

19.  The Sixth Circuit Court of Appeals artfully explained the dangers of relying solely on the four-prong test used in *Williams* to determine an exaction's character:

> The second and fourth 'prongs' of the . . . test [relating to imposition by the legislature under the police or taxing powers] describe virtually every government program; the first prong raises only the question of involuntariness . . . . What is

---

[6] *See* 567 U.S. at 564 (citing Congressional Budget Office, Payments of Penalties for Being Uninsured Under the Patient Protection and Affordable Care Act (rev. Apr. 30, 2010), in Selected CBO Publications Related to Health Care Legislation, 2009-2010, p. 71 (2010)).

8

> left is the single question of whether money demanded by the Government is to be put toward 'public purposes,' including 'defraying the expenses of government.' Needless to say, all money collected by the Government goes toward defraying its expenses, and is used for public purposes. The threat of the [four-prong test] reasoning, then, is that the Government automatically wins priority for all money any debtor owes it, regardless of the nature of the payments.

*Yoder v. Ohio Bureau of Workers' Compensation (In re Suburban Motor Freight)*, 998 F.2d 338, 341 (6th Cir. 1993). The *Williams* test is not determinative in this case.

20. An analysis of the characteristics of the SRP as identified by the *Sebelius* court, absent the constraints that Court was under, leads this court to conclude the SRP is a penalty. As stated by the dissent in *Sebelius*, "there is simply no way, 'without doing violence to the fair meaning of the words used,' to escape what Congress enacted: a mandate that individuals maintain minimum essential coverage, enforced by a penalty." 567 U.S. at 662 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting) (quoting *Grenada County Supervisors v. Brogden*, 112 U.S. 261, 269 (1884)).

21. The court recognizes that § 5000A(b)(1) imposes no "negative legal consequences to not buying health insurance, beyond requiring a payment to the IRS," and someone who pays the SRP instead of purchasing health insurance has "fully complied with the law." *Sebelius*, 567 U.S. at 568. The *Sebelius* Court doubted that Congress intended for failure to comply with the individual mandate to be considered unlawful, as data estimated that four million individuals would be liable for the SRP each year, and Congress would likely be "troubled by [the] prospect" of that many individuals acting unlawfully. *Id.* (citing Congressional Budget Office, Payments of Penalties for Being Uninsured Under the Patient Protection and Affordable Care Act (rev. Apr. 30, 2010), in Selected CBO Publications Related to Health Care Legislation, 2009-2010, p. 71 (2010)). This court is also aware that the United States District Court for the Eastern District of Louisiana recently found the SRP is a tax for purposes of 11 U.S.C. § 507(a)(8), focusing heavily on the

9

absence of adverse legal consequences for failure to comply with the individual mandate. *See United States v. Chesteen*, No. 18-2077, 2019 U.S. Dist. LEXIS 29346, at *7 (E.D. La. Feb 25, 2019).

22. The absence of additional legal consequences beyond liability for the SRP, though, should not preclude the court from finding that § 5000A(b)(1) imposes a penalty upon individuals who fail to purchase health insurance. Although the SRP does not possess the hallmark characteristic of a penalty identified in *CF&I*, "punishment for an unlawful act or omission,"[7] it nevertheless functions more like a penalty than a tax. *See Bradford v. United States, Dep't of the Treasury (In re Bradford)*, 534 B.R. 839, 849 (Bankr. M.D. Ga. 2015) (finding that *CF&I* "provides no reason to think that a purpose of punishing unlawful conduct is the *only* purpose inconsistent with the purpose of government support (and thus no reason to limit the definition of 'penalty' to exactions imposed on unlawful conduct)."). As noted by the dissent in *Sebelius*, "[w]hen an Act 'adopt[s] the criteria of wrongdoing' and then imposes a monetary penalty as the 'principal consequence on those who transgress its standard,' it creates a regulatory penalty, not a tax." 567 U.S. at 662-3 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting) (quoting *Child Labor Tax Case*, 259 U.S. 20, 38 (1922)).

Even if the Shared Responsibility Payment Were a Tax,
It Does Not Qualify as an Excise Tax on a Transaction or as an Income Tax

23. As noted *supra*, 11 U.S.C. § 507(a)(8)(E) prioritizes the payment of "excise tax[es] on . . . transaction[s] occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition . . . ." 11 U.S.C. § 507(a)(8)(E)(i). Assuming the SRP qualifies as a

---

[7] 518 U.S. at 224.

tax, then in order for § 507(a)(8)(E) to apply to the SRP, this court would have to find the SRP is an excise tax on some sort of transaction.

24. Black's Law Dictionary defines an "excise" as "[a] tax imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee)." *Excise*, Black's Law Dictionary (10th ed. 2014). With that definition in mind, the court cannot see how the SRP, assessed on individuals who choose to do nothing in the face of 26 U.S.C. § 5000A(a), could possibly qualify as an excise.

25. The IRS also cites certain case law which finds an excise may include a tax imposed upon "the exercise of a 'right or privilege.'" *Rizzo v. Mich. Dep't of Treasury (In re Rizzo)*, 741 F.3d 703, 706 (6th Cir. 2014) (quoting *In re Nat'l Steel Corp.*, 321 B.R. 901, 909 (Bankr. N.D. Ill. 2005)). The court in *National Steel Corp.* based its ruling, at least in part, on a prior edition of Black's Law Dictionary which included in the definition of an "excise tax" a tax on "the enjoyment of a privilege." 321 B.R. at 908 (quoting *Excise Tax*, Black's Law Dictionary (6th ed. 1990)). A privilege in that sense, though, is the right or privilege to engage in some sort of activity, not the right or privilege to ignore a statutory mandate. *See Nat'l Steel Corp.*, 321 B.R. at 909 ("Indeed, the Supreme Court observed nearly seventy years ago that 'an excise . . . extends to vocations or activities pursued as of common right.'") (quoting *Steward Machine Co. v. Davis*, 301 U.S. 548, 580-81 (1937)).

26. The IRS nevertheless asserts that § 507(a)(8) is meant to encompass all taxes, and the itemization of various types of taxes is meant solely to impose timing restrictions on the priority payment of certain taxes, not to exclude any unspecified type of tax from its purview. It seems the IRS would ask the court to "pick the closest match" within § 507(a)(8) in order to award priority status to the SRP. Still, the court cannot ignore the plain language of § 507(a)(8)(E) referencing

11

excise taxes *on transactions*. The IRS argues the reference to excise taxes on transactions should not disqualify excise taxes imposed on "non-transactions" from priority status. To support its argument, the IRS cited at the hearing a Seventh Circuit Court of Appeals case, *In re Groetken*, 843 F.2d 1007 (7th Cir. 1988). The *Groetken* court examined the legislative history of § 507(a)(8)(E) (which was § 507(a)(7)(E) at the time), and noted that "the floor leaders, Senator DeConcini and Representative Edwards, stated that: '*all* Federal, State or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and truck taxes.'" 843 F.2d at 1014 (quoting 124 Cong. Rec. 34,016 (Senate), *reprinted in* 1978 U.S. Code Cong. & Admin. News 6505, 6567; 124 Cong. Rec. 32,416 (House), *reprinted in* 1978 U.S. Code Cong. & Admin. News 6436, 6498). Despite this insight into the legislative history of what is now § 507(a)(8)(E), the statute clearly refers to excise taxes on transactions. The SRP does not fit within the definition of an excise, and it clearly does not qualify as an excise on a transaction. "'[T]ransaction' suggests *action*—such as the manufacture or consumption of a commodity, which, when viewed in strict isolation at least, may be a solitary act—not *in*action, deliberate or otherwise." *In re Huenerberg*, 590 B.R. 862, 871 (Bankr. E.D. Wis. 2018). The SRP owed by the Debtors cannot be entitled to priority under § 507(a)(8)(E), even if it qualified as a tax.

27. Finally, and despite the designation within its Claim that the SRP is an excise tax, the IRS asserts that in the alternative, the SRP is entitled to priority treatment as an income tax. Section 507(a)(8)(A) affords priority payment of taxes "on or measured by income or gross receipts . . . ." 11 U.S.C. § 507(a)(8)(A). Although in the years relevant to this matter, the SRP was determined for some individuals based on their income pursuant to 26 U.S.C. § 5000A(c)(2)(B), for some individuals, the SRP was based on a flat dollar amount pursuant to 26

U.S.C. § 5000A(c)(2)(A).  An exaction that is not always measured by income cannot qualify as an income tax.

28. The SRP is a penalty, not a tax, and even if it were a tax, it would not fit into any of the categories listed in 11 U.S.C. § 507(a)(8); now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. The Objection be, and hereby is, sustained; and

2. The IRS shall have a general unsecured claim in the amount of $2,277.79 in this case.

END OF DOCUMENT